UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| T.A., a minor student, by and through her parent, M.A., )<br><br>Plaintiff, )<br><br>v. )<br><br>BLEDSOE COUNTY SCHOOLS and JENNIFER TERRY, in her individual capacity, )<br><br>Defendants. ) | Case No. _____<br><br>**JURY DEMANDED** |

## COMPLAINT

**COME THE PLAINTIFFS, T.A.,** a minor, and M.A., her parent, and file this Complaint. They show:

### I. INTRODUCTION

1. This case involves the noxious use by students of the word "nigger" to describe and belittle T.A., their classmate of a different race.

2. It involves more than harassment by *students.* It also involves the overarching failures by *adults* to take appropriate preventive and remedial measures against such harassment. Foreseeably, T.A. tried to handle the harassment herself by striking back. And when she did, Bledsoe County Schools came down excessively hard, suspending her for 365 calendar days.

3. T.A. brings this action against Bledsoe County Schools for legal relief to redress unlawful discrimination on the basis of her race and color, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.

1

## II. THE PARTIES

4. Plaintiff T.A., a minor, and her parent, M.A., reside in Bledsoe County, Tennessee, and are citizens of the United States.

5. Defendant Bledsoe County Schools (BCS) is a local educational agency organized and existing under the laws of the State of Tennessee and operating in Bledsoe County, Tennessee. It receives federal financial assistance.

6. Jennifer Terry acted as Director of Bledsoe County Schools. She was an agent and/or employee of BCS and acted or failed to act within the scope and course of her duties. Upon information and belief, she is a resident of Bledsoe County, Tennessee, and a citizen of the United States.

## III. JURISDICTION AND VENUE

7. This court has jurisdiction over the 42 U.S.C. § 1983 and Title VI action pursuant to 42 U.S.C. § 1988 (jurisdiction over § 1983 claims) and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391(b)–(c) because the matters occurred within this District and the Defendant operates within this District.

## IV. FACTS

9. Bledsoe County is a small county north of Chattanooga, with a population of less than 15,000. Bledsoe County is more than 91% white; only about 6.7% of the population is African American, or less than 1,000 people in the entire county.[1]

---

[1] U.S. Census Bureau, "Quick Facts, Bledsoe County, Tennessee (2017)," *available at* https://www.census.gov/quickfacts/fact/table/bledsoecountytennessee/PST045217 (last visited Apr. 16, 2018).

10. T.A. is among the tiny minority of African-American students at Bledsoe County High School ("BCHS").

11. As a student, T.A. experienced years of racially demeaning comments from her fellow students. Sadly, in high school, this included being referred to as "nigger" and other racially hurtful epithets. These type of comments occurred at least weekly and were offensive, serious, and pervasive.

12. BCHS clearly lacks sufficient policies, training, and awareness to prevent the racial harassment endured by T.A. In fact, T.A. complained frequently of the harassment to BCHS personnel. So did T.A.'s mother, M.A.

13. BCHS failed to stop the harassment. Often, they would advise M.A. that it ws "creating a file," or "putting this in the file too," as if creating a diary. But this "file," if it even exists, did not stop the harassment.

14. By January 2018, T.A. had enough. She engaged in self-help by striking out. Specifically, in January, a female student called her a "nigger" in the cafeteria. Previously, this student's brother had called her "nigger" and received a very brief suspension. This time, T.A. took matters into her own hands and responded by striking the female student.Although neither T.A. nor the female student required any medical treatment, both were sent to the principal's office where they were placed in separate rooms.

15. BCHS called the other student's parents to the school. Sitting next door, T.A. heard those parents yelling and, like their daughter and son, calling T.A. a "nigger."

16. BCHS next called T.A.'s mother, M.A., to the school. While M.A. spoke to school officials, the other student's parent(s) went onto Facebook. In Facebook messages, they

asked where M.A. could be found. Later one, they posted a picture of a noose hanging in their own front yard.

17. BCHS officials warned M.A. about the racism within this family. Such racism—inside and outside of the school—had an adverse educational impact on T.A. She feared what could happen to her at school from this family. She feared returning to school and for her safety. However, BCHS took no action to actually protect her. It did not offer her any counseling. And it did not address the root problem of the systemic racism.

18. BCHS, through its principal, suspended T.A. three days for fighting. Although BCHS had allowed the racism to escalate, M.A. and T.A. reluctantly accepted that decision. However, by the next day, January 25, 2018, BCHS had changed course.

19. On January 25, 2018, M.A. received a letter from Director of Schools Jennifer Terry stating that T.A.'s suspension would be *not* for 3 days, but for 365 days. Not even a *school* year, this would be an entire *calendar* year. As a result, T.A. would likely fail her junior year and have to wait out an entire 12 months to *repeat* it. She would not graduate high school until she was nearly 20 years old.

20. Ms. Terry claimed this grossly excessive suspension was "in accordance with Tennessee State Law," as if her hands were somehow tied and she lacked discretion to consider the overarching circumstances of racism. Tennessee State Law does not *require* such an action, divorced from context and without any discretion.

21. T.A. appealed the 365 day suspension to the Board of Education, but in a brief meeting it summarily upheld the suspension and backed its Superintendent. Upon information and belief, this action was *inconsistent* with penalties for fighting for non-minorities or harassment committed by non-minorities.

22. The harassment along with the overly punitive suspension caused T.A. to suffer emotional distress, humiliation, and deprivation of her right to participate in regular public education free from racial harassment.

## V. CAUSES OF ACTION

### A. Violation of Title VI of the Civil Rights Act of 1964 (BCS)

23. Title VI of the Civil Rights Act of 1964 provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

24. Through intent and/or deliberate indifference, BCS tolerated a racially hostile educational environment, failed to adequately train to prevent such an environment, failed to take adequate remedial measures when confronted with reports, and instead engaged in aggressive actions against T.A. This deprived T.A. of the benefits of her education on the basis of race and/or color. It simply did not take reasonable action in light of the continuing circumstances to eliminate the behavior.

25. Additionally, BCS's overly harsh, punitive suspension/expulsion of T.A. for a full calendar year amounted to retaliation against T.A. for complaining about, reporting, and opposing racial discrimination and harassment, in violation of Title VI.

### B. 42 U.S.C. § 1983 for Violation of the Equal Protection Clause (All Defendants)

26. The Equal Protection Clause of Fourteenth Amendment to the United States Constitution provides, "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

27. Through intent and/or deliberate indifference, BCS had a custom, policy, or practice of encouraging, condoning, and/or failing to take appropriate remedial measures, including appropriate training, to stop and prevent known racial harassment, in violation of the Equal Protection Clause.

28. BCS's failure to properly train and supervise its employees regarding how to handle cases of racial harassment and discrimination was an inadequacy so likely to result in a violation of constitutional rights, BCS intended and/or was deliberately indifferent to the risk. This failure proximately caused the damages suffered by T.A.

29. Additionally, BCS took overly harsh, punitive disciplinary action against T.A. BCS's action of suspending/expelling T.A. from school for a full calendar year was unequal to the punishments given to her harassers or to other students who were punished for fighting and amounted to disparate treatment of T.A. due to her race.

30. Defendant Terry was a state actor working for BCS and acting under color of state law in failing to appropriately prevent or remedy the racial harassment and taking punitive disciplinary action against T.A.

### C. 42 U.S.C. § 1983 for Violation of the Due Process Clause (All Defendants)

31. The Due Process Clause of Fourteenth Amendment to the United States Constitution provides, "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." The Due Process Clause includes both substantive and procedural protections.

32. The Tennessee Constitution and Tennessee state law give all children in Tennessee a fundamental right to a public education. Tenn. Const. Art. XI, Sec. 12; Tenn. Code

6

Ann. §§ 49-6-3001(c)(1), 3003. No child can be deprived of this fundamental right without due process. *See Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 732 (Tenn. 2012).

33. Even when proper procedures seemingly have been followed in reaching an adverse decision, a procedural due process claim still lies where the procedure was so tainted by racial bias and prejudice that the risk of unfairness is intolerably high. *See Withrow v. Larkin*, 421 U.S. 35, 58 (1975); *Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 736 (Tenn. 2012).

34. The Sixth Circuit Court of Appeals has also recognized a substantive due process claim lies in the educational setting for discipline that is so severe, arbitrary, or disproportionate that it shocks the conscience. *See Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987).

35. BCS's custom, policy, or practice of encouraging, condoning, and/or failing to take appropriate remedial measures, including appropriate training, to stop and prevent known racial harassment caused the suspension/expulsion procedure to be tainted by racial bias and prejudice, leading to a disciplinary outcome that was so severe, arbitrary, and disproportionate that it shocks the conscience. Thus, BCS's actions violate both the procedural and substantive aspects of the Due Process Clause.

## VI. PRAYER FOR RELIEF

36. WHEREFORE, Plaintiff prays for the following relief:

   A. Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and injury to reputation;

   B. Punitive damages under § 1983;

   C. Reasonable attorneys' fees and costs, including any expert fees;

   D. Any other legal and equitable relief to which she may be entitled; and

E. Plaintiff further demands a jury to try this cause.

Respectfully submitted,

GILBERT McWHERTER
SCOTT BOBBITT PLC

s/Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 17079)
200 W. Martin Luther King Blvd., Suite 1067
Chattanooga, TN 37402
(423) 499-3044
(731) 664-1540 Facsimile
jgilbert@gilbertfirm.com

Caraline E. Rickard (TN Bar No. 34414)
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
(615) 354-1144
(731) 664-1540 Facsimile
crickard@gilbertfirm.com

*ATTORNEYS FOR PLAINTIFF*